**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, LOCAL # 99, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 94–1005.

United States Court of Appeals, District of Columbia Circuit.

Argued March 21, 1995.

Decided Aug. 11, 1995.

Marc B. Gursky, Providence, RI, argued the cause and filed the briefs for petitioner.

Angela M. Washington, Atty., National Labor Relations Board ("NLRB"), with whom Linda R. Sher, Acting Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, and Peter D. Winkler, Super-

visory Atty., NLRB, Washington, DC, were on the brief, argued the cause for respondent.

Before SILBERMAN, BUCKLEY, and GINSBURG, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Local Union No. 99, International Brotherhood of Electrical Workers, AFL–CIO, petitions for review of a National Labor Relations Board order holding that it engaged in an unfair labor practice and directing it to take appropriate remedial actions. Because we agree with the Board that Local 99 did not give Robert Carroll adequate notice of the consequences of his failure to remit his union dues before it took steps that resulted in his discharge from employment, we deny the petition for review and grant the Board's cross-application for enforcement.

## I. BACKGROUND

In 1986, Jack McGee started his own business, Electrical Maintenance and Control, Inc. ("EMC"), which specialized in installing and maintaining temperature control systems. EMC became a party to a collective bargaining agreement ("Wireman's Agreement") with Local 99. The Wireman's Agreement contained a "union security clause" that provided, in pertinent part:

All employees who are members of the Union on the effective date of this Agreement shall be required to remain members of the Union as a condition of employment during the term of this Agreement. New Employees shall be required to become and remain members of the Union as a condition of employment from and after the thirty-first day following the date of their employment, or effective date of this Agreement, whichever is later.

Wireman's Agreement art. II, § 3, *reprinted in* Joint Appendix ("J.A.") at 44–45. Mr. McGee requested and obtained Mr. Carroll's services through Local 99's hiring hall.

During all relevant periods, employed members of Local 99 paid dues of 2½% of their weekly pay checks and a quarterly per capita levy. In 1991, Mr. Carroll failed to make his first two quarterly payments. By letter dated June 21, 1991, Local 99 informed him of his delinquency and excerpted the following passages from the International Brotherhood of Electrical Workers ("IBEW") Constitution:

Any member indebted to his [local union] for six months' full dues shall be dropped from membership by the [Financial Secretary for the local union] and cannot become a member in good standing again in the I.B.E.W. except by joining as a new member. (Article XXIII, Sec. 4)

Letter from Spaziano to Carroll of 6/21/91, *reprinted in* J.A. at 28. The letter thus warned Mr. Carroll that on June 30, 1991, he would face expulsion from the union should he fail to remit payment by that date; it neglected to warn him, however, that a failure to meet the deadline would also result in his discharge from EMC. Mr. Carroll later testified that he deposited the necessary checks in a mailbox on Saturday, June 29, 1991. The envelope containing them was postmarked July 1.

On receipt of that envelope on July 2, Local 99's Financial Secretary, Alfred Spaziano, mailed Mr. Carroll a letter returning his checks and informing him that, pursuant to the IBEW Constitution, the union had dropped him from membership. By another letter dated July 2, 1991, Mr. Spaziano informed Mr. McGee that the union had terminated Mr. Carroll's membership. In accordance with the union's security clause, Mr. McGee discharged Mr. Carroll a few days later. Mr. Carroll appealed the termination of his union membership to the president of the International, who reinstated him on the ground that while "[t]he postmark on the letter containing the payment of a member's dues is the criteria used in determining timeliness of a payment," the envelope that had contained Mr. Carroll's checks had not been made part of the record. Letter from Barry to Carroll of 1/17/92, *reprinted in* J.A. at 39.

In the meantime, on October 23, 1991, Mr. Carroll charged Local 99 with violations of the National Labor Relations Act ("NLRA" or "Act"); and, on January 22, 1992, the

NLRB Regional Director for Region 1, acting on behalf of the General Counsel of the NLRB, issued a complaint upon Mr. Carroll's charge. After a two-day hearing in June 1992, an administrative law judge ("ALJ") concluded that Local 99 had "breached its fiduciary duty to deal fairly with Robert Carroll by failing to properly notify him, and afford him a reasonable opportunity to take action to preserve his union membership and his job with EMC." *Local Union 99, Int'l Bhd. of Elec. Workers, AFL–CIO,* 312 N.L.R.B. 613, 619, 1993 WL 391288 (1993). The ALJ found that Local 99's letter to Mr. McGee caused the latter to discharge Mr. Carroll. Accordingly, he held that Local 99 "restrained and coerced Carroll in the exercise of his rights guaranteed in Section 7, and thereby caused [EMC] to discriminate against Carroll, in violation of Section 8(b)(1)(A), and 8(b)(2) of the [NLRA]." *Id.* at 621. The ALJ also found that Local 99 violated the Act when it terminated Mr. Carroll's union membership without proper notice, *id.,* and entered an order to remedy these violations.

The Board affirmed the ALJ's finding that Local 99 had failed to provide adequate notice to Mr. Carroll prior to effecting his discharge from employment. *Id.* at 613 n. 2. The Board issued an amended remedial order, which, *inter alia,* required Local 99 to ask EMC to reinstate Mr. Carroll and to make him whole with an award of lost earnings and interest. Having unsuccessfully sought reconsideration from the Board, Local 99 petitions for review of its decision; and the Board cross-applies for enforcement of its order.

## II. DISCUSSION

■ A union security clause gives the union the formidable power to compel an employee's discharge from current employment for failure to pay union dues in a timely manner. Although permitted by the NLRA, *see* 29 U.S.C. § 158(a)(3) (1988), because such clauses condition employment on union membership, they "are strictly regulated." *Radio–Electronics Officers Union v. NLRB,* 16 F.3d 1280, 1286 (D.C.Cir.1994). The Board has consistently affirmed that a union seeking to enforce a union security clause has a "fiduciary duty to deal fairly with the employee affected." *Rocket and Guided Missile Lodge 946, Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO,* 186 N.L.R.B. 561, 562 (1970) (internal quotation marks omitted); *see also Communication Workers of Am., Local 9509, AFL–CIO (Pacific Bell),* 295 N.L.R.B. 196, 196, 1989 WL 224119 (1989). We, for our part, have long endorsed this general principle, and have held that, because a union security clause empowers the union to "require [an employee's] membership or command his discharge," a union enforcing such a clause is "charged with an obligation of fair dealing which includes the duty to inform the employee of his rights and obligations so that the employee may take all necessary steps to protect his job." *International Union of Elec., Radio and Machine Workers, AFL–CIO, Frigidaire Local 801 v. NLRB,* 307 F.2d 679, 683 (D.C.Cir.1962).

■ More recently, the Board has reaffirmed that, as part of a union's duty of fair dealing,

it must at a minimum give the employee reasonable notice of the [dues] delinquency, including a statement of the precise amount and months for which dues are owed and of the method used to compute this amount, tell the employee when to make the required payments, and *explain to the employee that failure to pay will result in discharge.*

*Communications Workers,* 295 N.L.R.B. at 196 (emphasis added); *see also Western Publishing Co.,* 263 N.L.R.B. 1110, 1111–12, 1982 WL 23942 (1982). While Local 99's June 21 letter to Mr. Carroll alerted him to the fact that a failure to pay his dues would result in the termination of his union membership, it did not indicate that he would lose his current job as well. Thus, this case requires us to decide whether the omission of such a warning in a union's notice is sufficient in itself to prevent the enforcement of a security clause. We agree with the Board that it is.

Although Local 99 does not dispute the propriety of the notice requirement, it insists that it is inapplicable here because Mr. Carroll knew that his failure to pay his dues by

June 30, 1991, would result in his discharge. This position is not reflected in the record; and, in any event, it is irrelevant. The Board has articulated a prophylactic rule that obviates the need to inquire into Mr. Carroll's subjective knowledge. It has declared that "at a minimum" a union's notice of an employee's dues obligation must "explain to the employee that failure to pay will result in discharge." *Communications Workers*, 295 N.L.R.B. at 196. As we have no basis for finding that the Board exceeded its authority when it established this bright-line rule, we uphold its conclusion that Local 99's notice to Mr. Carroll was fatally flawed in that it failed to warn him that he would lose his job if he did not meet the June 30 dues payment deadline.

Local 99 also contends that the ALJ erred in concluding that its termination of Mr. Carroll's union membership, standing alone, violated the NLRA. Local 99, however, did not raise this challenge before the Board. Although its Memorandum in Support of Exceptions to the ALJ's Decision does on two occasions refer to the termination of Mr. Carroll's union membership, in both instances the context indicates that Local 99 was contesting the ALJ's conclusion that it had violated the Act by causing Mr. Carroll's discharge from EMC. As Local 99 did not preserve this issue, we are precluded from addressing it. *See* 29 U.S.C. § 160(e) (1988) ("No objection that has not been urged before the Board ... shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."); *UFCW, Local No. 150–A v. NLRB*, 1 F.3d 24, 27 (D.C.Cir.1993).

### III. CONCLUSION

For the aforementioned reasons, the petition for review is denied; and the cross-application for enforcement is granted.

*So ordered.*